**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____X

**BERNARD HORN-BOSTEL,**

             **Plaintiff,**                       **Case No.**

    **-against-**

                                            **COMPLAINT**

**AUSTIN COINS, INC.,**
**AUSTIN LLOYD, INC.,**
**PATRICK J. WHITE,**
**ERIC P. LESAK (ALIAS "MIKE TODD"),**
**GEORGE GREGORIOU,**
**TIMOTHY JAMES KING,**
**SEAN KLEIN,**
**CHRISTIAN FOSTER,**
**BRANDON E. CHANCEY,**
**JOHN DOE, AS REPRESENTATIVE OF THE ESTATE**
**OF CHRISTOPHER M. PARADISE, DECEASED,**
**CHARISMA PERRY,**
**NEW YORK FEDERAL GOLD, LLC,**
**P. WHITE HOLDINGS, LLC,**
**P WHITE INC.,**
**CASH MONEY BULLION CORP.,**
**JUST JOHN, LLC,**
**CNP13, INC.,**
**BULLION MUSCLE INC.,**
**BKGS HOLDINGS, INC. and**
**CHRISTOPHER PARADISE & ASSOCIATES, INC.,**

             **Defendants.**

_____X

Plaintiff, Bernard Horn-Bostel  ("Mr. Horn-Bostel" or "Plaintiff") complaining of the

_Corporate Defendants_, Austin Coins, Inc. ("Austin Coins")"), and Austin Lloyd, Inc. ("Austin

Lloyd"), the _Individual Defendants_, Patrick J. White ("White"), Eric P. Lesak (alias "Mike Todd")

("Lesak"), George Gregoriou ("Gregoriou"), and Timothy James King ("King"), the _Conspiracy_

_Defendants_, Sean Klein ("Klein"), Christian Foster ("Foster"), Brandon E. Chancey ("Chancey")

and John Doe, as Representative of the Estate of Christopher M. Paradise, Deceased ("Paradise"),

and the *"Aiding and Abetting" Defendants*, Charisma Perry ("Perry"), New York Federal Gold,

LLC ("NYFG")[1], P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion

Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc.

("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS"), and Christopher Paradise & Associates, Inc.

("CP&A") through the undersigned counsel files his Original Complaint and respectfully alleges:

## NATURE OF THE CASE

1.      Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organization

Act, 18 U.S.C. §§ 1961-1968 (RICO) and New York law. This case involves a primary fraud

scheme and a conspiracy to commit fraud by a group of Long Island precious metal coin dealers

who conspired to and did, in fact, commit telemarketing fraud against Plaintiff and numerous other

elderly citizens[2] through and under the auspices of the corporate defendants, Austin Coins, Inc.

and Austin Lloyd, Inc. (hereinafter the "Austin Lloyd Enterprise"), a RICO enterprise within the

meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)).

---

[1] Discovery may indicate that NYFG, BKGS, and CP&A, are hybrid "*Corporate*" and "*Aiding and Abetting*" Defendants.

[2] Coin fraud targeting the elderly has a long history in the Eastern District of New York. *See, e.g., United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *19 n.5 (E.D.N.Y. 2013) and the testimony adduced at the criminal RICO coin fraud trial against Michael Romano and William Kearney:

> Patrick Coleman, Defendants' former employee, testified at trial that . . . Mr. Kearney's avowed sales tactics were to "crush weak people" and to "confuse the shit" out of "older people." . . . Daren Mutone, a former employee of Atlantic Coin Galleries, testified at trial that the Atlantic Coin Galleries salespeople would make fun of the victims because they were old and easier to convince. . . . Mr. Mutone testified that the elderly were "easier to push around," and that Mr. Romano and Mr. Kearney would hear the jokes and push the sales staff to sell even more coins to a victim who showed susceptibility to pressure and manipulation.

2.      The Austin Lloyd Enterprise's scheme was conducted by the Individual Defendants and facilitated by the Conspiracy Defendants, with the knowing assistance and support of the "Aiding and Abetting" Defendants through an "open-ended" pattern of racketeering activity of specific predicate acts, consisting specifically, in Mr. Horn-Bostel's case, of conning and scamming Mr. Horn-Bostel over the telephone into shipping two (2) inventories of precious metal coins to Austin Coins "strictly for appraisal purposes" and then, after providing him a phony, low-ball valuation of his coins, and rather than returning the coins, instead effectively absconding with and converting his inventories of coins, all in furtherance of the Austin Lloyd Enterprise and to enrich themselves. In addition, or else in the alternative, Plaintiff alleges common law fraud and other torts and violations, resulting in significant damages to him.

3.      The *Individual Defendants* are principals (i.e. Defendant White) and officers/representatives/telemarketing agents of the Corporate Defendants, Austin Lloyd and Austin Coins (i.e, Lesak, Gregoriou, and King)) who scammed and defrauded Mr. Horn-Bostel, and who, along with the *Conspiracy Defendants* (i.e., Defendants Klein, Foster, Chancey, and Christopher M. Paradise, Deceased), who are other representatives and telemarketing sales agents of the Corporate Defendants, are all members of the enterprise, all of whom maintained an interest in and/or exerted control over the Austin Lloyd Enterprise within the meaning of 18 U.S.C. § 1962(b) and/or who working in combination to advance the Austin Lloyd Enterprise, and to enrich themselves, had a meeting of the minds, came to an agreement, and conducted and participated to further the Austin Lloyd Enterprise by conspiring within the meaning of 18 U.S.C. § 1962(d) to swindle, defraud, and rob Mr. Horn-Bostel and numerous other elderly customers[3] of all or part of

---

[3] In this Complaint, whenever the term "customer(s)" appears, Plaintiff intends it to mean both "customer(s)" and "consumer(s)."

their life savings through telemarketing coin fraud scams.

4.      The *"Aiding and Abetting" Defendants*, including Defendants Perry, NYFG, PWH, PWI, CMBC, Just John, CNP13, Inc., Bullion Muscle, BKGS, and CP&A, also conspired with the Individual Defendants to accomplish the Austin Lloyd Enterprise's fraud schemes against elderly customers of Austin Lloyd and Austin Coins, including Mr. Horn-Bostel, and/or aided and abetted those fraud schemes with knowledge of said schemes and provided substantial assistance to advance the commission of the fraud schemes and to launder the enterprise's ill-gotten gains.

5.      Even were some or all of the Defendants determined not to have personally committed any predicate acts, each agreed to join and participate in the Austin Lloyd Enterprise with knowledge that the predicate acts of coin and precious metals fraud would be committed by some member(s) of the enterprise. Thus, each of the Defendants is liable for the torts of each of the other co-conspirators.

6.      *Plaintiff* Bernard Horn-Bostel, an 84-year-old retiree who fell prey to the Individual Defendants' fraudulent scheme in furtherance of the Austin Lloyd Enterprise which has targeted numerous elderly telemarketing customers over a period of years, continuing to the present, and which is facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Mr. Horn-Bostel of at least ONE HUNDRED TWENTY-FOUR THOUSAND EIGHT HUNDRED THREE DOLLARS AND 00/100 CENTS ($124,803.00) as part of an open-ended,[4] systematic pattern of fraud targeting

---

[4]      Unfortunately, Mr. Horn-Bostel is far from the only elderly customer to complain of identical or substantially similar coin fraud "investment" and "appraisal" schemes by the Individual Defendants in furtherance of the Austin Lloyd Enterprise. *See, e.g., Stephen E. Mauch v. Austin Lloyd, Inc., et al.*, Case No. 2:22-cv-04180 (E.D.N.Y.) filed July 16, 2022 (alleging similar fraud scheme and damages of $1.8 million to elderly corn farmer); *Jeffrey Miller v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-06140 (E.D.N.Y.) (alleging similar fraud scheme and damages of $51,300.00 to elderly, retired dentist) filed August 15, 2023; *Allan R. Miller and Cheryl A. Miller v. v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-

elderly customers, as well as breach of fiduciary duty, resulting from offers to conduct appraisals of Mr. Horn-Bostel's coin inventories and representations that they would trade Mr. Horn-Bostel precious metal coins worth a sum certain, but instead simply absconding with and converting his coins in exchange for coins that are in actuality only worth a small fraction of the value of Mr. Horn-Bostel's coins and the values represented to him and upon which he relied in authorizing the transactions.

7.     Mr. Horn-Bostel seeks to recover of and from the Defendants, jointly and severally, actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964, statutory treble damages under New York General Business Law § 349, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

8.     Plaintiff, **Bernard Horn-Bostel** is a citizen and resident of the State of Nevada.

9.     Defendant **Austin Lloyd, Inc.** ("Austin Lloyd") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk

---

06207 (E.D.N.Y.) (alleging similar fraud schemes and damages of $92,000,00 to an elderly couple) filed August 17, 2023; *Earl E. Keith v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-09461 (E.D.N.Y.) (alleging similar fraud scheme and damages of over $244,000.00 to 82-year-old victim) filed December 22, 2023; *AnnaMarie F. Eakins v. Austin Lloyd, Inc., Austin Coins, Inc., et al.*, Case No. 2:24-cv-00206 (E.D.N.Y.) (alleging similar fraud schemes and damages of over $580,000.00 to 77-year-old widow and stroke victim); and *John H. Fikse v. Austin Lloyd, Inc. and Austin Coins, Inc., et al.*, Case No. 2:24-cv-00220 (E.D.N.Y.) (alleging similar fraud schemes and damages of $328,550.00 to 90-year-old victim); *David R. Grindle v. Austin Coins, Inc., et al.*, Case No. 2:24-cv-01125 (E.D.N.Y.) (alleging similar fraud schemes and damages of $80,000.00 to 72-year-old Wisconsin farmer); *William Kevin Cleary v. Austin Lloyd, Inc., et al.*, Case No. 2:24-cv-01663 (E.D.N.Y.) (alleging similar fraud schemes and damages of $50,000.00 to 78-year-old victim); and *Hans B. von Nolde v. Austin Coins, Inc., et al.*, Case No. 2:24-cv-06998 (E.D.N.Y.) (alleging similar fraud schemes and damages of $150,000.00 to 81-year-old victim). *See also Larry Dale Withers v. Austin Lloyd, Inc., et al.*; File No. 23-CVS-1024; In the General Court of Justice, Superior Court Division, Pender County, North Carolina (state court coin fraud case). Plaintiff's counsel is in the process of preparing complaints against these same Defendants on behalf of additional elderly telemarketing fraud victims. The foregoing demonstrates a long-running, ongoing, open-ended RICO pattern.

County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as the "Aiding and Abetting" Defendants, that were defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise).[5]

**10.** Defendant **Austin Coins, Inc.**[6] ("Austin Coins") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as the "Aiding and Abetting" Defendants, that were defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise).

**11.** Defendant **Patrick J. White** ("White") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743-6530 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, White is a principal/officer of and controlled Austin Lloyd and Austin Coins, who, together with the other defendants herein, participated in the conduct of the

---

[5] Because Defendant Austin Lloyd, Inc. is the RICO enterprise, Plaintiff is not asserting claims against it as a RICO person. However, Plaintiff is asserting certain New York state law claims against Austin Lloyd, Inc. as detailed *infra*.

[6] Austin Coins, Inc. is a sister entity to, or de facto successor-in-interest to Austin Lloyd, Inc. which was incorporated in New York on May 5, 2015. Both entities share the same office address and the same principals/officers. Austin Coins was incorporated in New York on June 9, 2020. Austin Coins also still actively markets itself and operates under the d/b/a "Austin Lloyd, Inc." More recently, it appears that New York Federal Gold, LLC, which shares the same office address and the same principal (Patrick J. White) as both Austin Coins, Inc. and Austin Lloyd, Inc., may be, or be in the process of becoming, the de facto successor-in-interest to Austin Coins, Inc.

affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

**12.**     Defendant **Eric P. Lesak** ("Lesak"), operating under the alias "Mike Todd," [7] and known as "the Closer," is a New York citizen and resident of Nassau County, New York, with a last known residential address at 3494 Clifton Boulevard, Wantagh, NY 11793 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Lesak (BOP Register Number 31319-018) is presently incarcerated at Lewisburg FCI, 2400 Robert F. Miller Drive, Lewisburg, NY 17837 having been convicted of securities fraud. Lesak held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent, "Senior Account Advisor," and  "investment advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Bullion Muscle Inc. ("Bullion Muscle")) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

**13.**     Defendant **George Gregoriou** ("Gregoriou") is a New York citizen and resident with a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. Gregoriou was a

---

[7]  It is hardly surprising that a twice-convicted recidivist securities fraudster such as Lesak would use an alias. *See* https://www.sec.gov/files/litigation/complaints/2018/comp24239.pdf. Use of a fictitious name makes it difficult, if not impossible, for victims of coin fraudsters' schemes to identify, sue, or serve the actual, specific perpetrator. Further, there is precedent for RICO coin fraud telemarketers to use aliases when interacting with customers. *See United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *20 n.6 (E.D.N.Y. 2013) (in criminal RICO coin fraud trial, "Michelle Stumpf testified . . . that the Defendants and their salespeople used false names when interacting with customers").

telemarketing sales agent, "Senior Account Advisor," and "investment advisor" for the Corporate Defendants, Austin Lloyd, Inc. and Austin Coins, Inc., who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

14.     Defendant **Timothy James King** ("King") is a New York citizen and believed to be a resident of Suffolk County, New York, with a last known address in Suffolk County at 813 Ft. Salonga Road, C, Northport, NY 11768. On information and belief, King is, or at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, Austin Lloyd, Inc. and Austin Coins, Inc., who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

15.     Defendant **Sean Klein** ("Klein") is a New York citizen and resident of New York County, New York with a last known residential address at 261 Hudson Street, Apt. 3F, NY, NY 10013. Klein held himself out as an officer of Austin Lloyd and Austin Coins, as well as a telemarketing sales agent and  "investment advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to

fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel, and others, through a pattern of racketeering activity.

16.     Defendant **Christian Foster** ("Foster") is a New York citizen and believed to be a resident of Suffolk County, New York, with a last known residential address at 10 Applewood Road, Saint James, NY 11780. On information and belief, Foster is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

17.     Defendant **Brandon E. Chancey** ("Chancey") is a New York citizen and resident of Queens County, New York, with a last known residential address at 4545 Center Blvd., Apt. 18-12 Long Island City, NY 11109. On information and belief, Chancey is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities

(including those of BKGS Holdings, Inc. ("BKGS)  and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

18.      Defendant **John Doe, as Representative of the Estate of Christopher M. Paradise, Deceased**, ("Paradise"), is the as-yet-unappointed estate representative of the decedent, Christopher M. Paradise,[8] who passed away on January 26, 2024, was a New York citizen and resident of Suffolk County, New York, with a with a last known residential address at 3 Bradford Place, Melville, NY 11747 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Paradise was at all times pertinent a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities (including those of Christopher Paradise & Associates, Inc. ("CP&A) and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel (as well as other elderly

---

[8]  Neither Paradise's surviving spouse nor anyone else has sought appointment as representative of the Paradise estate. On September 10, 2024, in the consolidated ALI cases (including *Earl Keith v. Austin Lloyd, Inc., et al.*, 2:23-cv-09461), Plaintiff's counsel requested that Magistrate Judge Dunst issue an order under the All Writs Act, 28 U.S.C. § 1651, compelling the Town Clerk of Oyster Bay to issue a death certificate for Christopher Paradise to Plaintiffs' counsel so that Plaintiffs can institute an administration against Paradise's estate. Plaintiff's request was denied without prejudice.

victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

19.     Defendant **Charisma Perry** ("Perry") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, Perry is White's girlfriend or "domestic partner," and she conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else she knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, Perry was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, Perry was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

20.     Defendant **New York Federal Gold, LLC** ("NYFG") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, NYFG is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd

Enterprise. NYFG received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund NYFG's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

21.     Defendant **P. White Holdings, LLC** ("PWH") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWH is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWH received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWH's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's racketeering schemes by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other

elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

22.    Defendant **P White Inc.** ("PWI") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWI is a shell company and alter ego of its sole and managing member, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. PWI received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWI's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel  (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

23.    Defendant **Cash Money Bullion Corp.** ("CMBC") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CMBC is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CMBC received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CMBC's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

24.    Defendant **Just John, LLC** ("Just John") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Just John is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. Just John received and was enriched by funds generated by the business activities of the Austin Lloyd

Enterprise which funds were used to fund Just John's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

25.     Defendant **CNP13, Inc.** ("CNP13") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CNP13 is a shell company and alter ego of its principals, Charisma Perry and/or Patrick J. White, who is a principal/officer of and controlled Austin Lloyd and Austin Coins, as well as the Austin Lloyd Enterprise. CNP13 received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CNP13's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. Horn-Bostel, and others, and/or conspired to participate in the Austin Lloyd  Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and

active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

26.    Defendant **Bullion Muscle Inc.** ("Bullion Muscle") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3494 Clifton Boulevard, Wantagh, NY 11793. On information and belief, Bullion Muscle is a shell company and alter ego of its sole principal, Erik P. Lesak (a/k/a "Mike Todd"), who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. Bullion Muscle received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Bullion Muscle's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

27.    Defendant **BKGS Holdings, Inc.** ("BKGS") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 49 Franklin St., Northport, NY 11768-3058. On information and belief, BKGS is a shell company and alter

ego of its sole principal, Brandon E. Chancey, who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. BKGS received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund BKGS's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

28.     Defendant **Christopher Paradise & Associates, Inc.** ("CP&A") is a corporation organized under the laws of the State of New York with its principal address for service with the New York Secretary of State located in Suffolk County at 429 Atlantic Avenue, Suite 2A, Freeport, NY 11520. On information and belief, CP&A is a shell company and alter ego of its sole principal, Christopher M. Paradise, deceased, who held himself out to be, an officer of Austin Lloyd and Austin Coins. CP&A received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CP&A's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. Horn-Bostel, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. Horn-Bostel, and others, by the members of the

Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. Horn-Bostel (as well as other elderly victims of the Austin Lloyd Enterprise) by the Corporate Defendants, White, and the other Individual Defendants.

### *Jurisdiction and Venue*

**29.** This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because, and insofar as, they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

**30.** In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Nevada, and Defendants all are citizens of states other than Nevada, and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

**31.** This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from their offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

**32.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

### INTRODUCTION TO THE COIN *FRAUD* INDUSTRY
### AND THE AUSTIN LLOYD RACKETEERING ENTERPRISE

#### A.    Primer: the Coin *Fraud* Industry

33.    While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[9] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

### B.    The Coin Fraudsters Prey Upon the Elderly.

34.    A decade ago, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[10] The U.S. Senate Report further revealed that the "*overwhelming number of victims in precious metal fraud are seniors*."[11] Likewise, the FBI has found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought*

---

[9]   *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

[10]   *See  Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report")*.*

[11]   *See* US Senate Report at 16.

*[they] could get away with it"* and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[12] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[13]

**35.**   More recently, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims.*"[14] In fact, most of the fraud advisories and enforcement actions by Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[15]

### C.  The Austin Lloyd Enterprise

**36.**   The person at the apex of the Austin Lloyd Enterprise and the mastermind of its scheme targeting elderly precious metals telemarketing customers is the principal of both Austin Lloyd and Austin Coins, Patrick J. White ("White"). On information and belief, White is a former

---

[12] *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[13] *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[14] *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins (Texas), https://www.ag.state.mn.us/consumer/publications/-CoinDealers.asp  (Minnesota),and  https://www.myfloridalegal.com/consumer-protection/how-to-protect-yourself-rare-coin-investment-schemes (Florida).

[15] *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

securities broker who has been permanently barred from working in the securities industry by FINRA,[16] as has his number one telemarketing sales agent, "Senior Account Advisor," "investment" advisor, rogue securities broker, and current involuntary guest of the Federal Bureau of Prisons, Eric P. Lesak (alias "Mike Todd") ("Lesak") who is also a member, and the maleficent driving force, of the Austin Lloyd Enterprise.

37.    White and the Austin Lloyd/Austin Coins telemarketing minions (Lesak, Gregoriou, and King), as well as the Conspiracy Defendants, Klein, Chancey, Foster, and Paradise, all of whom had a meeting of the minds to scam, defraud, and launder money illegally obtained from elderly customers, with the knowing support of the Aiding and Abetting Defendants (CNP13, Lesak's company, Bullion Muscle, Chancey's company, BKGS, Paradise's company, CP&A, and all of White's various shell companies[17]), controlled, participated in, and/or advanced the criminal operations of the Austin Lloyd Enterprise and cultivated the Austin Lloyd Enterprise into the textbook example of the most egregious serial abusers of elderly coin customers in the entire coin fraud industry to date.

## FACTS COMMON TO ALL OF MR. HORN-BOSTEL'S CLAIMS

38.    Plaintiff Bernard Horn-Bostel is an 84-year-old retiree and amateur coin collector who had the misfortune to cross paths with the members of the Austin Lloyd Enterprise and get snared in the patented Austin Lloyd "Fraud Scam Type Three"[18]—the fake appraisal/coin "trade" scam

---

[16]  "FINRA" is the Financial Industry Regulatory Authority, a private American corporation that acts as a self-regulatory organization for its member brokerage firms and exchange markets. https://www.finra.org/#/.

[17]  Specifically, PWH, PWI, NYFG, CMBC, and Just John.

[18]  A survey of the claims asserted by the victims identified in footnote 4, *supra*, reveals that the Austin Lloyd/Austin Coins telemarketers' "playbook" consists of three (3) fundamental scams: (1) unrelenting high-pressure telemarketing phone calls with fraudulent, unconscionably overpriced sales of coins as "investments"; (2) bank/credit card fraud; and (3) appraisal/buy-back coin theft and conversion.

engineered by Lesak, Gregoriou, and King, by way of which they absconded with Mr. Horn-Bostel's coin inventories for *de minimis* and unauthorized compensation, as described in detail below.

**39.** On information and belief, Patrick J. White ("White"), the principal of the Corporate Defendants, Austin Coins and Austin Lloyd, and the mastermind and ringleader of the Austin Lloyd Enterprise, never had any direct dealings with Mr. Horn-Bostel. It was White's minions, Eric P. Lesak ("Lesak") (under the alias "Mike Todd"), George Gregoriou ("Gregoriou"), and Timothy James King ("King") who had most, if not all, of the personal telephonic interactions with Mr. Horn-Bostel.

**40.** At all times pertinent, Lesak was a telemarketing representative and "Senior Account Advisor" for Austin Lloyd and Austin Coins. Lesak also is known to have held himself out to different customers as an "owner," "Senior Investment Advisor," and "Executive Director of Purchasing, and Senior Partner" for Austin Lloyd and Austin Coins.[19] In fact, Lesak expressly represented to Mr. Horn-Bostel that he was the "top guy" at Austin Coins. King was represented to Mr. Horn-Bostel to be the "expert coin buyer" for Austin Coins. And Gregoriou, who first cold-called Mr. Horn-Bostel and attempted to sell him precious metal coins, indicated on Authorization forms forwarded to Mr. Horn-Bostel, that he was a "Senior Account Advisor" for Austin Coins.

**41.** Mr. Horn-Bostel, who is now 84-years old, began collecting precious metal coins around a decade ago. His first interaction with members of the Austin Lloyd Enterprise occurred in

---

[19] On information and belief, all Austin Lloyd/Austin Coins telemarketers utilize standardized sales "scripts" composed and developed by White and Lesak to lure and convince their customers to purchase grossly overpriced coins and/or to ship their coins to Austin Lloyd and Austin Coins in New York for "appraisal" where the coins are then converted and resold to other unsuspecting elderly customers—"lather, rinse, repeat." In addition, on information and belief, Defendants, or a third-party vendor, maintain recordings of all their telemarketing calls to customers, including Plaintiff.

**September 2023** when he received a "cold-call" telephone solicitation from Gregoriou on behalf of "Austin Coins" attempting to sell him some gold and silver coins. Mr. Horn-Bostel stated that he was not interested in buying any coins but that he might have an interest in selling some of his coins.

42.    Hearing that, Gregoriou transferred the call to Timothy King ("King") another "Austin Coins" representative. King inquired about Mr. Horn-Bostel's coin inventory. In response, Mr. Horn-Bostel informed King that he was interested in selling some eleven (11) of his coins that he understood to be valued at approximately $80,000-$90,000 based on the prices he paid for them. Mr. Horn-Bostel made clear to King that he had no interest in *trading* his coins but rather would only consider *selling* the coins in exchange for cash.

43.    King then falsely represented to Mr. Horn-Bostel that if he shipped his coin inventory to Austin Coins, he would value and appraise the coins and would then provide Mr. Horn-Bostel with the appraisal as well a "cash offer" to purchase the coins.

44.    Mr. Horn-Bostel was understandably hesitant to ship his coins from Nevada to New York in response to an unsolicited telephone call from people with a company with which he had never done business without some assurances and security measures, but King convinced him that Austin Coins was a reputable coin dealer and to ship the coin inventory to Austin Coins by telling Mr. Horn-Bostel that his coins would not be appraised until Mr. Horn-Bostel signed an "Authorization to Appraise" Form and sent his coins to Austin Coins. The "Authorization to Appraise" Form, which was pre-"e-signed" by Gregoriou (rather than King), plainly states that its purpose "is to give permission for Austin Coins Inc. to take possession of BERNIE HORN BOSTEL'S collectables, ***strictly for appraisal purposes***" (emphasis added). The "Authorization to Appraise" Form further provides:

Once Austin Coins Inc. receives the appraisal agreement GEORGE GREGORIOU, Senior Account Advisor at Austin Coins Inc., will get an appraisal quote for BERNIE HORN BOSTEL's collectables [*sic*]. From there, a new trade agreement will be drafted with the agreed upon terms by GEORGE GREGORIOU and BERNIE HORN BOSTEL. Once both parties reach an agreement, BERNIE HORN BOSTEL will receive two copies of a new trade agreement to be signed and returned to Austin Coins Inc. and/or a recorded telephone conversation will occur in its place.

**45.** In **October 2023**, in reliance upon King's slick, fast-talking sales patter and representations, Mr. Horn-Bostel packaged his inventory of 23 coins (Inventory No. 1) and sent the coins for appraisal, together with the Authorization to Appraise Form, to Austin Coins via a FedEx shipping container provided by King, in accordance with King's directions. The coins in Inventory No. 1 consisted of the following:

**PLAINTIFF'S COIN INVENTORY NO. ONE**

| Coin Description | Qty | Unit Price | Total Paid |
|---|---|---|---|
| 2018 W $25 Palladium Eagle PGCS PR70 | 3 | $6,250 | $18,250.00 |
| 2018 W $25 Silver Eagle PF70 Ultra Cameo | 1 | $300.00 | $300.00 |
| 2018 Silver Eagle MF70 FDOI | 1 | $300.00 | $300.00 |
| 2020 W Silver Eagle PF70 CAM FDOI (4 pc. set) | 8 | $1,395.00 | $11,160 |
| 2020-W Gold Eagle PF70 DCAM FDOI (4 pc. set) | 1 | $20,850.00 | $ 20,850.00 |
| 2020 W $25 Palladium Eagle PCGS SP70 | 2 | $7,900.00 | $ 15,800.00 |
| 2020 $1 Silver Eagle V75 PF 70D CAM | 1 | $2,750.00 | $ 2,750.00 |
| 2020 Silver Eagle (P) MS70 | 4 | $ 695.00 | $ 2,780.00 |
| 2019 *Silver Eagle Enhanced PCGS PR70 | 2 | $ 6,500.00 | $ 13,000.00 |
| **TOTALS** | **23** | | **$98,890.00** |

**46.** Upon receiving Mr. Horn-Bostel's coin inventory, King contacted him via telephone and, without ever giving him any actual dollar appraisal of the coins, falsely informed him that the coin inventory "was not worth $80,000.00" (while also refusing to provide any exact dollar value). Despite this disturbing revelation, King nonetheless informed Mr. Horn-Bostel that he would value the coin inventory at $112,000.00 but *only* if Mr. Horn-Bostel would agree to accept in *trade* for

his coin inventory fifteen (15) coins that King assured Mr. Horn-Bostel were valued at $112,000.00, rather than payment in cash as Mr. Horn-Bostel had insisted and King had originally promised

**47.**    Shocked and distressed by King's representation that the coin inventory was worth less than Mr. Horn-Bostel thought—and less even than he had paid for it—Mr. Horn-Bostel at first remained adamant that he would only accept cash for his coins, pursuant to the parties' initial agreement. King, however, refused to abide by the initial agreement and instead insisted that Mr. Horn-Bostel accept the "trade" coins in lieu of the cash payment he initially had agreed to and by which he had tricked Mr. Horn-Bostel into relinquishing possession of his coins and shipping them to Austin Coins. King assured Mr. Horn-Bostel that this exchange "was *more than fair*."  Mr. King pointed to the "NGC Price Guide" that revealed prices of the coins that would equal or exceed the promised amount of $112,000.00. King failed to advise Mr. Horn-Bostel that the NCG Price Guide was grossly inflated and had no correlation to the coins' actual fair market value.

**48.**    In reliance upon King's representation that the "15 trade coins" were worth $112,000.00, Mr. Horn-Bostel reluctantly agreed but demanded that Mr. King send him everything in writing. Mr. King assured Mr. Horn-Bostel that he would send him a written agreement outlining the terms of the "trade." Shortly thereafter, in late October/early November 2023, Mr. Horn-Bostel received a shipment from Austin Coins containing the fifteen (15) *silver* coins along with Invoice # INV-014994 dated **October 27, 2023** with the following coins (denoted "As Per Trade" *and* without any valuations besides "0.00" for each coin):

**COINS PRESENTED IN TRADE FOR INVENTORY NO. ONE**

| Description | Qty | Purchase Price | FMV |
|---|---|---|---|
| 1986 John Mercanti Signed American Silver Eagle NGC MS-70 | 4 | 0.00 | $ 2.900.00 |
| 1988 John Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | $ 875.00 |
| 1991 John Mercanti Signed American Silver Eagle NGC MS-70 | 3 | 0.00 | $ 3,750.00 |
| 1991 P MERCANTI SILVER EAGLE PCGS MS-70 | 1 | 0.00 | $ 1,050.00 |
| 1992 John Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | $ 765.00 |
| 2001 John Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | $ 760.00 |
| 1995 John Mercanti Signed American Silver Eagle NGC MS-70 | 3 | 0.00 | $ 3,900.00 |
| 2004 W DAVID HALL SILVER EAGLE PCGS PR 70 | 1 | 0.00 | $ 100.00 |
| **TOTALS** | **15** | **$112,000.00** | **$14,100.00** |

**49.** Notwithstanding Mr. King's promises and Mr. Horn-Bostel's multiple requests, Mr. Horn-Bostel never received any written agreement nor did he ever receive any appraisal of his coin inventory from King or Austin Coins; all he received were the fifteen (15) "certified modern bullion" *silver* coins listed which, it turns out, had a combined fair market value as of the date of the invoice of just $14,100.00 and not the $112,000.00 King represented to Mr. Horn-Bostel. At this point in time, while concerned by King's low-ball assessment of the value of the twenty-three (23) Inventory No. 1 coins (which included *palladium, gold,* and *silver* coins), Mr. Horn-Bostel had not had the fifteen (15) "trade" coins evaluated, was still relying upon King's "expert" representations as to the "trade" coins' value, and still had no reason to believe that he had been swindled.

**50.** Subsequently, in **November 2023**, King again telephoned Mr. Horn-Bostel to inquire as to whether Mr. Horn-Bostel might be interested in "selling" more of his coins to Austin Coins. After Mr. Horn-Bostel told him that he still was interested in selling some coins, King told Mr. Horn-Bostel that he was transferring him to his "superior," a "Mr. Mike Todd" (i.e. Defendant Eric P. Lesak operating under his usual alias). Lesak (aka "Mike Todd") represented to Mr. Horn-Bostel that he was the "top guy" at Austin Coins and that he would help Mr. Horn-Bostel with the

appraisal and sale of Mr. Horn-Bostel's additional coin inventory. Mr. Horn-Bostel informed Lesak (aka "Mike Todd") that he had a second inventory of seventeen (17) **gold** coins which he was confident had a combined value of approximately $51,000.00, but that (again) he was only interested in selling this inventory in exchange for cash.

51.     Remarkably, Lesak (aka "Mike Todd") promised Mr. Horn-Bostel that he would appraise Mr. Horn-Bostel's coins at $87,000.00 (i.e. $5,800.00 per coin) ***sight unseen*** and that upon receipt of Mr. Horn-Bostel's coins, Austin Coins would send Mr. Horn-Bostel in exchange fifteen (15) coins valued at $87,000.00. Mr. Horn-Bostel again reluctantly agreed and shipped via a FedEx container provided by Lesak his second coin inventory to Austin Coins in New York, together with the Authorization to Appraise Form as directed by Lesak (aka "Todd)". The coins in Inventory No. 2 consisted of the following:

**PLAINTIFF'S COIN INVENTORY NO. TWO**

| Coin Description | Qty | Unit Price | Original Purchase Price |
|---|---|---|---|
| 2011 $5 Gold American Eagle Bullion | 10 | $177.90 | $1,779.00 |
| 2016 W $50 West Pt. American Eagle SP70 PR70 | 1 | $4,715.00 | $4,715.00 |
| 2016 $200 High Relief Gold Pearl Harbor PR70 | 1 | $8,184.00 | $8,184.00 |
| 2016 3 PC Set Gold Pearl Harbor PR70 | 1 | $6,290.00 | $6,290.00 |
| 2016 2 PC Set Gold/Silver Pearl Harbor MS70 | 1 | $3,153.00 | $3,153.00 |
| 2003 Gold American Eagle Michael Reagan PR70 | 1 | $8,929.00 | $8,929.00 |
| 2004 4 PC Set Gold American Eagle Michael Reagan PR70 | 1 | $8,920.00 | $8,920.00 |
| 2002 4 PC Set Gold American Eagle Michael Reagan | 1 | $8,920.00 | $8,920.00 |
| **TOTALS** | **17** | | **$50,888.00** |

52.     In short order, Mr. Horn-Bostel received from Austin Coins via FedEx the second set of "certified modern bullion" ***silver*** coins that "Mr. Todd" had promised were valued at $87,000.00

in exchange for his second coin inventory of **gold** coins, with the following coins (denoted "As Per Trade" *and* without any valuations besides "0.00" for each coin):

| Description | Qty | Purchase Price | FMV |
|---|---|---|---|
| 1986 Mercanti Signed American Silver Eagle NGC MS-70 | 4 | 0.00 | |
| 1988 Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | |
| 1991 Mercanti Signed American Silver Eagle NGC MS-70 | 3 | 0.00 | |
| 1991 P Mercanti Silver American Eagle PCGS MS-70 | 1 | 0.00 | |
| 1992 John Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | |
| 2001 John Mercanti Signed American Silver Eagle NGC MS-70 | 1 | 0.00 | |
| 1995 John Mercanti Signed American Silver Eagle NGC MS-70 | 3 | 0.00 | |
| 2004 W DAVID HALL SILVER EAGLE PCGS PR 70 | 1 | 0.00 | |
| **TOTALS** | **15** | **$87,000.00** | **$10,875.00** |

Mr. Horn-Bostel subsequently was dismayed to learn that a reputable local coin dealer would valued them at just $10,875.00.

**53.** Neither of the two (2) sets of "certified modern bullion" silver coins (numbering 30 coins altogether)[20] that Austin Coins sent Mr. Horn-Bostel in exchange for his gold, palladium, and silver coins are even remotely worth the amounts represented by King and Lesak (aka "Mike Todd"), respectively. Upon receiving the second set of coins, Mr. Horn-Bostel strongly suspected that King and Lesak (aka "Mike Todd") had defrauded him, and he immediately took both sets of "trade" coins to a reputable Nevada coin company to get them appraised. Much to his dismay, the local coin company confirmed Mr. Horn-Bostel's suspicions, and for the first time, he learned that the first set of coins Austin Coins sent him in exchange for his first coin inventory, which King had assured Mr. Horn-Bostel was worth $112,000.00, was only worth a fraction of the represented value. The second set of coins Austin Coins sent Mr. Horn-Bostel in exchange for his second coin

---

[20] The fact that King and Lesak, like Judas Iscariot, appear to have betrayed the elderly Mr. Horn-Bostel and absconded with his two (2) coin inventories for a combined "30 pieces of silver" may be a sick in-joke on behalf of the Austin Lloyd Enterprise. *See, e.g.,* King James Bible, Matt. 26:15.

inventory, which Lesak (aka "Mike Todd") had assured Mr. Horn-Bostel was worth at least $87,000.00, like the first set of "trade" coins, was only worth a fraction of the represented value.

54.   Immediately after receiving the shocking valuations from his local coin company, Mr. Horn-Bostel attempted in vain to contact King and Lesak (aka "Mike Todd"). When King and Lesak (aka "Mike Todd") refused to take or return his calls, Mr. Horn-Bostel called to talk to anyone else at Austin Coins who might remedy the problem. However, everyone he managed to speak to at Austin Coins gave Mr. Horn-Bostel the runaround, and Austin Coins and its telemarketing representatives have blatantly refused to acknowledge Mr. Horn-Bostel's complaints and objections or to make any efforts to remedy the situation.

55.   Ultimately, as set out and summarized in the foregoing Tables, a local precious metal dealer conducted a valuation of: (1) Mr. Horn-Bostel's two (2) coin inventories which he shipped to King and Lesak at Austin Coins as of the dates of shipment and of the "30 pieces of silver" "trade" coins King and Lesak represented to Plaintiff to be worth a total of $199,000 and shipped back to Plaintiff. As shown above, the thirty "certified modern bullion" "trade" coins had a fair market value as of the time of shipment to Plaintiff of just $24,975.00, a fraction of the amount represented by King and Lesak, and $124,803.00 less than the price paid originally by the Plaintiff.

56.   The principal of Austin Coins and Austin Lloyd, and the mastermind and ringleader of the Austin Lloyd Enterprise, Patrick J. White, and the telemarketing agents (King, Lesak, and Gregoriou) of Austin Coins, all of whom are members of the Austin Lloyd Enterprise, along with the other Austin Lloyd/Austin Coins agents, representatives, and co-conspirators, Klein, Chancey, Foster, and Paradise, had a meeting of the minds and conspired with one another to run a confidence scheme on numerous elderly telemarketing customers, including specifically Mr. Horn-Bostel: (1) to convince him to ship his two inventories of gold, palladium, and silver bullion

coins to Austin Lloyd and/or Austin Coins for appraisal and then, once they had gained possession of the coin inventories, (2) to steal and convert his coins for their own enrichment and in furtherance of the Austin Lloyd Enterprise in exchange for certain "certified modern bullion" silver coins that were in reality only worth a fraction of the amounts represented and a fraction of the value of the coins Plaintiff "traded" for them. The ultimate goal of the Defendants, and the primary, if not entire, business model of the Austin Lloyd Enterprise, is to defraud and impoverish elderly customers and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, the elderly Mr. Horn-Bostel has suffered (and continues to suffer) devastating economic damages, which Defendants refuse to remedy.

**ADDITIONAL FACTS REGARDING THE "*AIDING AND ABETTING*" DEFENDANTS**

**57.**   In 2023, dueling lawsuits involving principals of Austin Lloyd brought to light the identities of additional persons and entities that knowingly agreed to aid and abet the fraud schemes of the members of the Austin Lloyd Enterprise.[21]

**58.**   Before becoming the principal owner and mastermind of Austin Lloyd and Austin Coins, White was a principal/half owner in another "rare coin" business ("New York Rarities Limited Liability Company" which White organized on August 19, 2016) with partners Thomas Laviano and Jillian Laviano providing the capital for the business. According to the lawsuit of *New York Rarities Limited Liability Company, Thomas Laviano and Jullian Laviano v. Patrick White, Charisma Perry, et al.*, Index No. 607542/2017 (Supreme Court, Nassau County), the Lavianos discovered that White and Perry were running the same types of coin fraud scams through New

---

[21] The referenced lawsuits are : (1) *Patrick White and Austin Lloyd, Inc. v. Jensen Adoni, et al*.; Index No. 60476/2023; In the New York Supreme Court, Suffolk County and (2) *Jensen Adoni, individually and derivatively on behalf of Austin Lloyd, Inc. v. Austin Coins, Inc., et al*.; Index No 621767/2023; In the New York Supreme Court, Suffolk County.

York Rarities that Plaintiff suffered in this suit.

**59.** When White and the Lavianos had a "falling out" (i.e., when White got caught, and the Lavianos filed suit), White approached family friend Jenson Adoni in 2017 about partnering with him in the coin business. White and Jenson Adoni ("Adoni") used an existing New York corporation that Adoni's father previously had formed "Austin Lloyd, Inc." White began telemarketing operations as "Austin Lloyd, Inc." and assembled a sales staff, many of which, like White, were barred, suspended, or disciplined by FINRA and/or the SEC for illegal or unethical sales practices. The sales and operations staff included Lesak and Klein.[22]

**60.** In or around 2022, Adoni discovered multiple "red flags" in White's operation of Austin Lloyd and attempted to reign in White and his rogue coin telemarketing sales team, particularly Lesak and Klein. By January 2023, White made overtures to "buy-out" Adoni's interest in Austin Lloyd. Adoni contended that Austin Lloyd had sales in excess of $29,000,000 in 2022 alone, with profits of more than $12,000.000.

**61.** In February 2023, Adoni discovered that White had organized a separate New York corporation, Austin Coins, Inc. ("Austin Coins") and contends that White had been making sales from Austin Lloyd's coin inventory but funneling the proceeds of those sales into Austin Coins.

**62.** White ran Austin Lloyd and Austin Coins as a single entity and failed to observe corporate formalities. In fact, Austin Coins continues to do business as "Austin Lloyd, Inc." For all practical purposes, Austin Lloyd and Austin Coins are run as one and the same, and their funds and finances are commingled.

---

[22] On page 17, paragraph 129 of the complaint in *Adoni v. Austin Coins, et al.*, Adoni contends that "White made [Austin Lloyd, Inc.] a haven for disgraced brokers because they could employ sales tactics which were utilized to sell stocks in an industry that was generally unrelated."

**63.** Austin Lloyd's Chase bank account records for <u>January 2022 through February 2023</u> document the following transactions involving certain of the Individual Defendants and "Aiding and Abetting" Defendants in this case:

- **$821,732.65** in transfers from Austin Lloyd to Charisma Perry ("Perry"), White's *inamorata*[23]

- **$1,805,220.52** in transfers from Austin Lloyd directly to White, to PWH, to PWI or to White's American Express credit card

- **$1,422,154.54** in cash withdrawals (by White)

- **$1,745,000** in transfers from Austin Lloyd to Lesak's company, Bullion Muscle

- **$620,000** via six (6) payments from Austin Lloyd to Klein (via wire transfers) and

**64.** Adoni's complaint further asserts that Austin Lloyd and White made payments and transfers to White's other companies, the *Aiding and Abetting Defendants,* NYFG, CMBC, and Just John, and to CNP13 (owned by White and/or Perry), thereby converting and attempting to launder monies that White and the Austin Lloyd Enterprise had defrauded and stolen from telemarketing customers, such as Mr. Horn-Bostel.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST ALL DEFENDANTS FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS AND MONEY LAUNDERING

**65.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

---

[23] In a Request for Information [Dkt. No. 112] filed in the *White v. Adoni, et al.* case (Index No. 60476/2023), it appears that between January 2022 and December 2022—one calendar year—Perry actually received **over $3 million** from Austin Lloyd.

**66.** At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**67.** At all relevant times, Austin Lloyd, Inc. was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

**68.** At all relevant times, Individual Defendant White was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**69.** At all relevant times, Corporate Defendant Austin Coins, Inc. was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

**70.** At all relevant times, each of the Individual Defendants, White, Lesak (aka "Mike Todd"), Gregoriou, and King, and each of the Conspiracy Defendants, Klein, Chancey, Foster, and Paradise, was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d) and, to the extent that each "acquire[d] or maintain[ed], directly or indirectly, any interest in or control of" the Austin Lloyd Enterprise, 1962(b).

**68.** The Individual Defendants, the Conspiracy Defendants, and Austin Coins, as members of the Austin Lloyd Enterprise had a meeting of the minds and agreed to commit a series of predicate acts consisting of mail and wire frauds, as well as money laundering, constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) against Mr. Horn-Bostel, and numerous other elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate acts of the conspiracy against multiple elderly telemarketing customers, including Mr. Horn-Bostel, began no later than 2020[24] and continue through the present. The Individual Defendants, White and Lesak (aka "Mike Todd"), and Corporate Defendant, Austin Coins, each participate in the Austin

---

[24] One of the victims whose case is referenced in footnote 4, *supra*, Stephen E. Mauch, alleged in his Complaint that he was first contacted by these same telemarketing defendants in early 2021. Another elderly victim, AnnaMarie F. Eakins, alleges that the scheme by these same telemarketing defendants to defraud her and steal her coin inventory began in mid-2021. Mr. Horn-Bostel's first interactions with members of the Austin Lloyd Enterprise was in 2023. Nevertheless, it is clear that Defendants have been running a coin fraud telemarketing racket against elderly customers for over three (3) years.

Lloyd Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and the Individual Defendants, Lesak (aka "Mike Todd") King, and Georgiou,, who directly interacted with Plaintiff as telemarketing sales agents or representatives of Austin Coins and as persons associated with the Austin Lloyd Enterprise, agreed to facilitate and commit the individual predicate acts of fraud and money laundering as part of the fraudulent scheme targeting numerous elderly customers, and Mr. Horn-Bostel in particular, in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

69.    This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341), wire fraud (in violation of 18 U.S.C. § 1343), and money laundering (in violation of 18 U.S.C. § 1956(a)(1)). White, as principal, and, on information and belief, Lesak, King, Georgiou, Klein, Foster, Chancey, and Paradise, as officers and/or representatives of the Austin Lloyd Enterprise, knew that the telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including Plaintiff, to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

70.    White, as principal, and, on information and belief, Lesak, King, Georgiou, Klein, Foster, Chancey, and Paradise, as officers and/or representatives, are members of the Austin Lloyd Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect of the Austin Lloyd Enterprise.

71.    The pattern of unlawful activity conducted as individuals and in their representative capacities

as principals and representatives of the Austin Lloyd Enterprise, by White, as principal, and, on information and belief, by Lesak, King, Georgiou, Klein, Foster, Chancey, and Paradise, as officers, and/or representatives, proximately and/or directly caused Plaintiff to suffer injury to his business and/or property within the meaning of 18 U.S.C. § 1964(c).

**72.** At all relevant times, each of the "*Aiding and Abetting*" Defendants, Charisma Perry ("Perry"), New York Federal Gold, LLC ("NYFG"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc., and Christopher Paradise & Associates, Inc. ("CP&A"), was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d), and each of them agreed to join the Austin Lloyd Enterprise with knowledge that White and the Individual Defendant members of the enterprise would commit and were committing multiple predicate acts of mail and wire fraud and money laundering and that the exorbitant financial fruits of those predicate acts of fraud and money laundering were being transferred from and through the Austin Lloyd Enterprise to the "*Aiding and Abetting*" Defendants via multiple transfers in order to "launder" and hide those funds from Plaintiff and other elderly victims of the Austin Lloyd Enterprise.

**73.** As a direct and proximate result of the violations set forth above, Mr. Horn-Bostel has been injured. The Individual Defendants', Conspiracy Defendants', and the "*Aiding and Abetting*" Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Horn-Bostel is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

**COUNT II**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *AIDING AND ABETTING DEFENDANTS* FOR AIDING AND ABETTING MONEY LAUNDERING**

**74.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**75.**  Plaintiff further incorporates by reference all factual statements and allegations set out in Count III, *infra*, and Count IV, *infra*, as if fully copied and set forth below at length.

**76.**  Each of the "*Aiding and Abetting*" Defendants, Charisma Perry ("Perry"), New York Federal Gold, LLC ("NYFG"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), Bullion Muscle Inc. ("Bullion Muscle"), BKGS Holdings, Inc. ("BKGS")and Christopher Paradise & Associates, Inc. ("CP&A"), had knowledge of the primary RICO frauds of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 by the Individual Defendants, Lesak, King, and Georgiou, as well as White, Schmidt, Klein, Chancey, and Foster, in furtherance of the Austin Lloyd Enterprise and the primary RICO fraud of money laundering in violation of 18 U.S.C. § 1956(a)(1)).

**77.**  Each of the "*Aiding and Abetting"* Defendants, provided substantial assistance in the money laundering operation of the Individual Defendants in furtherance of the Austin Lloyd Enterprise by receiving, accepting, and retaining monies from the Austin Lloyd Enterprise with knowledge that he/she/it was helping to launder and hide the financial fruits of the primary frauds perpetrated by the Individual Defendants against Mr. Horn-Bostel and the numerous other elderly victims of the Austin Lloyd Enterprise.

**78.**  As a direct and proximate result of the violations set forth above, Mr. Horn-Bostel has been injured. The "*Aiding and Abetting*" Defendants' 18 U.S.C. § 1962(d) conspiracy with and/or

substantial assistance to the Individual Defendants in violating 18 U.S.C. § § 1956(a)(1) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Horn-Bostel is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT III

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *INDIVIDUAL DEFENDANTS* FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)

**79.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**80.** By the acts described herein, the Individual Defendants, particularly White, Lesak (aka "Mike Todd"), King, and Georgiou, as members of the Austin Lloyd Enterprise, knowingly executed or intentionally participated in a scheme that defrauded, and was intended to defraud, Mr. Horn-Bostel, and numerous other elderly citizens, and employed the use of the mails, as an integral part of said scheme and in furtherance thereof.

**81.** Central to, and in furtherance of, that scheme, and as described above, the Individual Defendants, in their capacities of principal, telemarketing sales agents, and "account managers" and "investment" advisors, made misrepresentations over the telephone to Mr. Horn-Bostel as to the agreements to appraise his coin inventories and "trade" for coins of represented values concomitant with or greater than the values of the inventories and sought to and did, in fact, trick him into accepting unauthorized and inadequate consideration (shipping via private carrier the "30 pieces of silver" "certified modern bullion") in trade seeking to set up a novation defense and finally simply stealing and converting his coin inventories for *de minimis* consideration, if any. The Individual Defendants' use of the wires in perpetrating their schemes was not merely incidental to their fraud and misrepresentations but rather, given that the scheme was dependent

upon telemarketing technology, and was instrumental to their scheme in that Mr. Horn-Bostel was never able to see them in person, look them in the eye and gauge their sincerity and veracity, much less physically inspect the "trade" coins.

82.   The means by which the Individual Defendants were able to con Mr. Horn-Bostel into trusting them and shipping his coin inventories to them for appraisal and "trade" in furtherance of the scheme and thereby defraud him of a portion of his life savings is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of the members of the Austin Lloyd Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) and mail was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

83.   As a direct and proximate result of the fraudulent theft and conversion of the coin inventories set forth above and summarized in the Tables, *supra*, Mr. Horn-Bostel has been injured. The Individual Defendants' multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Horn-Bostel is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

**COUNT IV**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR MONEY LAUNDERING (18 U.S.C. § 1956(a)(1)) (AGAINST DEFENDANTS WHITE, PWH, PWI, NYFG, CMBC, JUST JOHN, PERRY, CNP31, LESAK, BULLION MUSCLE, KLEIN, KING, GREGORIOU, CHANCEY, FOSTER, PARADISE, BKGS, AND CP&A)**

84.   Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

85.   Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, King, Gregoriou, Chancey, and his

shell company, BKGS, Klein, Foster, and Paradise, and his shell company, CP&A, laundered monies defrauded from Mr. Horn-Bostel and other elderly customers of Austin Lloyd and Austin Coins in violation of 18 U.S.C. § 1956(a)(1) and in furtherance of the Austin Lloyd Enterprise.

**86.**   There were numerous financial transactions authorized and conducted by White through the Austin Lloyd Enterprise which transactions involved proceeds of specified unlawful activity (specifically, mail fraud and wire fraud under 18 U.S.C. § 1961(1)) as defined in 18 U.S.C. § 1956(c)(7) and in which White, PWH, PWI, NYFG, CMBC, and Just John, Perry, CNP31, Lesak, Bullion Muscle, King, Gregoriou, Chancey, BKGS, Klein, Foster, Paradise, and CP&A participated. Each of these Defendants had actual knowledge that the property involved in these financial transactions represented the proceeds of some form of unlawful activity. Each of these Defendants had actual knowledge that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and/or the control of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In addition, or else in the alternative, each of these Defendants conducted or attempted to conduct the transactions with the intent to promote the carrying on of the specified unlawful activities. *Id.* at § 1956(a)(1)(A)(i).[25]

**87.**   Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, King, Gregoriou, Chancey, and shell company, BKGS, Klein, Foster, and Paradise, and his shell company, CP&A, laundered monies defrauded from Mr. Horn-Bostel and other elderly customers of the Corporate Defendants in violation of 18 U.S.C. § 1956(a)(1). As a direct and proximate result of this violation, Mr. Horn-Bostel has been injured. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Horn-Bostel is

---

[25] *Leung v. Law*, 387 F. Supp. 2d 105, 118 (E.D.N.Y. 2005) (pleadings alleging money laundering are "not subject to the stringent particularity requirement of Rule 9(b)"); *Schlesinger v. Schlesinger*, No. 05-CV-5016-ADS-WDW, 2007 U.S. Dist. LEXIS 110930, at *37 (E.D.N.Y. 2007) (same).

entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## V.

### FRAUD AND/OR FRAUDULENT CONCEALMENT
### (AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK, KING AND GREGORIOU)

**88.**    The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, pleading in the alternative, alleges:

**89.**    Via a series of oral misrepresentations and high-pressure sales tactics (as set out in detail above), White, as principal of Austin Lloyd and Austin Coins, and Lesak, King, and Gregoriou, as officers and/or telemarketing representatives of Austin Lloyd and Austin Coins, and holding themselves out as "*senior account advisors*," convinced Plaintiff to ship his two coin inventories to them for "appraisal" and trade and then absconded with and converted Plaintiff's coin collection in return for falsely valuated silver "certified modern bullion" coins worth but a fraction of the represented values and Mr. Horn-Bostel's gold, palladium, and silver coins, thereby defrauding Plaintiff pursuant to New York common law.

**90.**    In addition, the Defendants are liable for fraudulent concealment against Mr. Horn-Bostel. The elements of fraudulent concealment are identical to the elements for fraud with the addition that the defendant must have a duty to disclose material information and failed to do so.

**91.**    The Defendants, Austin Lloyd and Austin Coins, as well as their individual principal, White, and their telemarketing sales agents, Lesak, King, and Gregoriou, represented to Mr. Horn-Bostel that they were "*account advisors*" and "appraisers" and thus had a duty to disclose to that they were not qualified to appraise his coin inventories and had no intention of appraising his coin inventories; rather, their intent from the outset was to convince him to relinquish possession of his

coins so they could convert and steal the coin collection for unconscionably *de minimis* consideration and to enrich themselves. The Defendants, and specifically Lesak, King, and Gregariou, had a duty to make such disclosures based upon the "special facts" doctrine, which provides that a duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. The "special facts" doctrine is applicable to the present case because the withheld and hidden material information was "peculiarly within the knowledge" of the Defendants, and Plaintiff could not have discovered such information through the exercise of ordinary intelligence. White, individually and as principal of Austin Lloyd and Austin Coins, is liable for the fraud of their agents, Lesak, King, and Gregoriou.

**92.**  The Defendants, Austin Lloyd and Austin Coins, and their individual principals and telemarketing sales agents, made the above-detailed false representations to Mr. Horn-Bostel with the intent that he rely upon them and with full knowledge that such representations were false when made. Mr. Horn-Bostel did, in fact, rely on these material and false representations when deciding to ship his coin inventories to Austin Coin for appraisal, only for Defendants to convert and steal those coin inventories in return for unconscionably inadequate and misrepresented consideration, all of which resulted in Mr. Horn-Bostel's financial damages and the Defendants' obscene financial gain.

**93.**  By virtue of the confidential business relationships created and established between Mr. Horn-Bostel and the self-identified Austin Lloyd/Austin Coins "senior account advisors," Lesak and King, the Defendants had a duty to disclose the above-described concealed material facts to Mr. Horn-Bostel. The deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, are the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally by

Lesak, King, and Gregoriou, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, and with his knowledge and approval, or, at the very least, in reckless disregard of Plaintiff's rights and interests.

94.    Mr. Horn-Bostel justifiably relied on the false representations and/or omissions of Lesak, King, and Gregoriou, both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, to his financial detriment. Defendants' wrongful actions constitute fraud at common law.

95.    Defendants, Lesak, King, and Gregoriou, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, concealed their wrongful actions with the intent to mislead and defraud Mr. Horn-Bostel. Mr. Horn-Bostel was not aware of, nor, through the exercise of due diligence, could he have become aware of Defendants' wrongful actions until such wrongful actions were consummated. Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, Lesak, King, and Gregoriou, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, had a duty to disclose to Plaintiff the above-detailed materially false information. Defendants' failure to do so constitutes fraudulent concealment under New York law.

96.    As a direct and/or proximate result of the false and misleading representations attributable to Austin Lloyd and Austin Coins and their principal, White, made by and through their telemarketing sales agents, specifically Lesak, King, and Gregoriou, Mr. Horn-Bostel has suffered (and continues

to suffer) damages arising from and related to the theft and conversion of his coin inventories, as well as mental anguish damages.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
**(AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK, KING AND GREGORIOU)**

**97.**   The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges that:

**98.**   To the extent that the acts, omissions, and representations of Lesak, King, and Gregoriou to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak, King, and Gregoriou, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd and Austin Coins, and their principal, White, were at minimum negligent in making such misrepresentations as to the appraisal of and values of the coins provided in "trade" for Mr. Horn-Bostel's coin inventories. Specifically, Lesak, King, and Gregoriou negligently supplied false information in the appraisal of the coin inventories and the value of the "trade" coins which guided Mr. Horn-Bostel, and upon which he relied, in his decision to ship his coin inventories to Austin Coins.

**99.**   Specifically, Lesak, King, and Gregoriu, while working as telemarketing representatives of Austin Lloyd and Austin Coins, and for their principal, White, and expressly representing themselves to be "senior account advisors, and in Lesak's case, the "top guy" at Austin Coins, offered to appraise Mr. Horn-Bostel's coin inventories, provided an incorrect, false low-ball appraisal, offered to "trade" coins that they represented were worth more than the coin inventories, and ultimately converted and stole the coin collection in exchange for unconscionably inadequate and misrepresented consideration. To the extent that the acts, omissions, and representations of

Lesak, King, and Gregoriou, which are attributable to Austin Coins and/or Austin Lloyd and to their principal, White, were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak, King, and Gregoriou were at minimum negligent in making such misrepresentations as to the appraisal of Plaintiff's coin inventories and the value of the "trade" coins. Specifically, Lesak, King, and Gregoriou, individually and as agents of the Corporate Defendants, negligently supplied false information that guided Mr. Horn-Bostel in his decision to ship the coin inventories to Austin Coins and to agree to take coins "in trade" rather than cash.

100.    Lesak, King, and Gregoriu, individually and as agents of the Corporate Defendants, failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information to Mr. Horn-Bostel and/or making the above-described false and material misrepresentations and omissions.

101.    Mr. Horn-Bostel justifiably relied upon the negligent misrepresentations of Lesak, King, and Gregoriou, individually and as agents of the Corporate Defendants, in his dealings with Austin Coins, and those misrepresentations directly and/or proximately caused him to suffer damages to the financial benefit of Austin Coins, Austin Lloyd, White, Lesak, King, and Gregoriou. Lesak's, King's, and Gregoriou's wrongful conduct, which is attributable to Austin Coins and/or Austin Lloyd, constitutes negligent misrepresentation under New York common law.

### COUNT VII
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (AGAINST AUSTIN LLOYD, AUSTIN COINS AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK, KING AND GREGORIOU)

102.    The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

103. The actions of Lesak, King, and Gregoriou described herein, all of which are attributable to Austin Coins and/or Austin Lloyd, constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of the New York Consumer Protection from Deceptive Acts and Practices, Gen. Bus. Law § 349.

104. More specifically, the Defendants, individually and through the Austin Coins and Austin Lloyd principal (White), telemarketer employees, and representatives, knowingly and intentionally utilized unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Mr. Horn-Bostel to ship his coin collection to Austin Coins/Austin Lloyd for appraisal in exchange for misrepresented, inaccurate, and unconscionably inadequate consideration, through one or more of the following deceptive acts or practices, including:

    a. Holding themselves out as "investment advisors" or "senior account advisors" while having no such expertise;

    b. Convincing Plaintiff to ship his coin collection to Defendants for appraisal and sale, but upon receipt of the coins, providing a knowingly low-ball and inaccurate appraisal, absconding with the coins, and paying Plaintiff off in "trade" with coins that were not worth the value represented; and

    c. Various other acts and practices that may be uncovered during discovery.

105. As a direct and proximate result of the Defendants' unlawful, unfair, and deceptive acts and practices, all of which are attributable to Austin Coins and/or Austin Lloyd and White, Mr. Horn-Bostel has suffered actual damages of at least ONE HUNDRED TWENTY-FOUR THOUSAND EIGHT HUNDRED THREE DOLLARS AND 00/100 CENTS ($124,803.00).

**COUNT VIII**
**MONEY HAD AND RECEIVED**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

106. The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and,

in addition, or else pleading in the alternative, alleges:

**107.**  By their above-described wrongful actions and/or inaction: (1) each of the "*Aiding and Abetting*" Defendants received money belonging to Plaintiff, (2) each of the "*Aiding and Abetting*" Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the "*Aiding and Abetting*" Defendants should not be permitted to keep the money. The "*Aiding and Abetting*" Defendants, therefore, should be compelled to refund such wrongfully received and retained funds to Plaintiff under the equitable doctrine of money had and received.

**COUNT IX**
**UNJUST ENRICHMENT**
**(AGAINST THE "*AIDING AND ABETTING*" DEFENDANTS)**

**108.**  The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**109.**  The "*Aiding and Abetting*" Defendants (and possibly other persons and entities, as-yet unidentified) have been unjustly enriched by receipt of funds of and from Austin Coins and/or Austin Lloyd (and White) which were obtained through fraud and/or stolen from Plaintiff.

**110.**   Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the "*Aiding and Abetting*" Defendants have been unjustly enriched.

**ALTER-EGO**

**111.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**112.**  Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to

pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

113.  Based upon information and belief, each of the Defendants, White, Lesak, King, Gregoriou, Klein, Foster, Chancey, and Paradise, individually and collectively, used the corporate form of Austin Lloyd and Austin Coins as an alter-ego and as a mere tool or business conduit. These Defendants, or some of them, completely dominate Austin Coins, Austin Lloyd, PWH, PWI, NYFG, CMBC, Just John, CNP13, Bullion Muscle, BKGS, and CP&A to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between White and/or Austin Lloyd and Austin Coins to Perry, PWH, PWI, NYFG, CMBC, Just John, CNP13, Bullion Muscle, BKGS, and/or CP&A, and there is an unclear allocation of profit and losses between Austin Coins and Austin Coins and White and the other Individual Defendants (or their shell companies). In short, Austin Coins and Austin Lloyd are substantially one and the same with each other and one and the same with White and possibly the other Individual Defendants, or some of them, and the relationship between Austin Coins/Austin Lloyd and White and the Individual Defendants (or some of them) is an illegitimate use of the corporate form.

114.  Pleading further, based on information and belief, Defendants PWH, PWI, NYFG, CMBC, and Just John are each owned, operated, and controlled solely and entirely by White. Upon information and belief, White uses the corporate forms of PWH, PWI, NYFG, CMBC, and Just John as alter-egos and as mere tools or business conduits. White completely dominates PWH, PWI, NYFG, CMBC, and Just John to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by

Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and PWH, PWI, NYFG, CMBC, and Just John, and there is an unclear allocation of profit and losses between PWH, PWI, NYFG, CMBC, and Just John and White. In short, PWI, NYFG, CMBC, and Just John are each substantially one and the same with White, and the relationship between White and each of these Defendants is an illegitimate use of the corporate form.

115. Pleading further, based on information and belief, Defendant CNP13, Inc. ("CNP13") is owned, operated, and controlled solely and entirely by White and/or Charisma Perry ("Perry"). Upon information and belief, White and/or Perry use the corporate form of CNP13 as an alter-ego and as a mere tool or business conduit. White and/or Perry completely dominate CNP13 to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, and/or White and CNP13, and there is an unclear allocation of profit and losses between CNP13 and White and/or Perry. In short, CNP13 is substantially one and the same with White and/or Perry, and the relationship between White and/or Perry and CNP13 is an illegitimate use of the corporate form.

116. Pleading further, based on information and belief, Defendant Bullion Muscle Inc. ("Bullion Muscle") is owned, operated, and controlled solely and entirely by Eric P. Lesak ("Lesak"). Upon information and belief, Lesak uses the corporate form of Bullion Muscle as an alter-ego and as a mere tool or business conduit. Lesak completely dominates Bullion Muscle to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information

and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coin and/or White and Bullion Muscle, and there is an unclear allocation of profit and losses between Lesak and Bullion Muscle. In short, Bullion Muscle is substantially one and the same with Lesak, and the relationship between Lesak and Bullion Muscle is an illegitimate use of the corporate form.

117. Pleading further, based on information and belief, Defendant BKGS Holdings, Inc. ("BKGS") is owned, operated, and controlled solely and entirely by Brandon E. Chancey ("Chancey"). Upon information and belief, Chancey uses the corporate form of BKGS as an alter-ego and as a mere tool or business conduit. Lesak completely dominates BKGS to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coin and/or White and BKGS, and there is an unclear allocation of profit and losses between Chancey and BKGS. In short, BKGS is substantially one and the same with Chancey, and the relationship between Chancey and BKGS is an illegitimate use of the corporate form.

118. Pleading further, based on information and belief, Defendant Christopher Paradise & Associates, Inc. ("CP&A") was owned, operated, and controlled solely and entirely by Christopher M. Paradise, deceased ("Paradise"). Upon information and belief, Paradise used the corporate form of CP&A as an alter-ego and as a mere tool or business conduit. Paradise completely dominated CP&A to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented

funds transfers between Austin Lloyd, Austin Coin and/or White and CP&A, and there was an unclear allocation of profit and losses between Paradise and CP&A. In short, CP&A was substantially one and the same with Paradise, and the relationship between Paradise and CP&A was an illegitimate use of the corporate form.

## RESPONDEAT SUPERIOR

**119.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**120.** Defendants Austin Coins and Austin Lloyd also are liable for the above-detailed wrongful acts committed by their principals, officers, agents, representatives, and employees during the course and scope of their agency/employment by Austin Coins and Austin Lloyd; to wit, the principals', officers', agents', employees', and representatives' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Austin Coins'/Austin Lloyd's business, and (iii) to accomplish the objective for which the principals/agents/employees/representatives were retained, all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—and for which Defendant is liable under the doctrine of *respondeat superior*.

## RELIEF REQUESTED

**121. RECISSION**. Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transaction(s) at issue by which Defendants fraudulently failed to appraise Plaintiffs' coin collection but instead converted and stole same. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**122. ACTUAL AND CONSEQUENTIAL DAMAGES.**  As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form

of, inter alia, the amounts Plaintiff lost in the fake appraisal and conversion scam and the mental anguish she has suffered in connection with such scam in an amount to be determined by the trier of fact.   All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

123. **TREBLE DAMAGES.**  Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c) and in violation of New York's GBL § 349 (up to the applicable cap).  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

124.  **EXEMPLARY DAMAGES**.  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

125.  **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**.  Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs actual damages to be determined by the trier of fact.

    **WHEREFORE**, Plaintiff, BERNARD HORN-BOSTEL, requests judgment in his favor and  against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c), exemplary damages, and all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of  a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and New York G.B.L. § 349(h) and

the costs of suit pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d); together with pre-judgment interest pursuant to New York C.P.L.R. § 5004 or any higher applicable rate and post-judgment interest at the highest legal rate, and such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Dated: Thornwood, New York
        October 9, 2024

**LAW OFFICES OF KENNETH G. WALSH**

By:   /s/ Kenneth G. Walsh
        Kenneth G. Walsh (1654)
        59 Kensico Road, Suite 7
        Thornwood, New York 10594
        (929) 241-7307
        *kwalsh@kgwalshlegal.com*

        -and-

**STEVENS LAW FIRM**

R. Lyn Stevens (*pro hac vice* forthcoming)
210 Clearview Avenue, Suite C
Friendswood, Texas 77546
(409) 880-9714
*Lyn@Stevens.Law*
Texas Bar No. 19189020

*Attorneys for Plaintiff,*
*Bernard Horn-Bostel*